

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
December 18, 2020 04:01 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1017176

**TIFFANY FINKTON**                           A 2004437

vs.

**CELLCO PARTNERSHIP DBA
VERIZON**

FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY
DEMAND

PAGES FILED: 19

EFR200



VERIFY RECORD

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIFFANY FINKTON | ) | CASE NO. |
| 3213 Roesch Blvd. East, Apt. E | ) | |
| Fairfield, OH 45014 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| CELLCO PARTNERSHIP | ) | |
| d/b/a Verizon | ) | **JURY DEMAND ENDORSED** |
| 3324 Princeton Rd, | ) | **HEREIN** |
| Hamilton, OH 45011 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| CELLCO PARTNERSHIP | ) | |
| c/o CT Corp. System (Stat. agent) | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| BOB FLYNN | ) | |
| c/o Cellco Partnership | ) | |
| 3324 Princeton Rd, | ) | |
| Hamilton, OH 45011 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JILLIAN SIGRIST | ) | |
| c/o Cellco Partnership | ) | |
| 3324 Princeton Rd, | ) | |
| Hamilton, OH 45011 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tiffany Finkton, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

## PARTIES

1. Tiffany Finkton ("Finkton") is a resident of the city of Fairfield, county of Butler, state of Ohio.

2. Cellco Partnership ("Cellco") is a for profit corporation company that conducts business throughout the state. The relevant location where the events and omission of the Complaint took place was 3324 Princeton Road, Hamilton, Ohio 45011 and at Cellco's other locations.

3. Cellco is, and was at all time hereinafter mentioned, Finkton's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e and R.C. § 4112.01(A)(2).

4. Defendant Bob Flynn ("Flynn") is a resident of the state of Ohio, upon information and belief.

5. Flynn was, at all time hereinafter mentioned, an individual who was a District Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Flynn's employment.

6. Cellco employed Flynn in the position of District Manager.

7. Flynn was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

8. Flynn made, and/or participated in, the adverse actions asserted, herein.

9. Defendant Jillian Sigrist ("Sigrist") is a resident of the state of Ohio, upon information and belief.

10. Sigrist was, at all times hereinafter mentioned, an individual who was a General Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Sigrist's employment.

# EXHIBIT 1

11. Cellco employed Sigrist in the position of General Manager.

12. Sigrist was, at all times hereafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

13. Sigrist made, and/or participated in the adverse actions asserted, herein.

## JURISDICTION AND VENUE

14. The material events alleged in this Complaint occurred in Hamilton County and at Cellco's other locations.

15. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (2) and (3).

16. Venue is proper pursuant to Civ. R. (3)(C)(1), (2), (3), and/or (6).

17. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

18. Within 180 days of the conduct alleged below, Finkton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-01844).

19. On or about October 15, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Finkton regarding the EEOC Charge.

20. Finkton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

21. Finkton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

22. Finkton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Finkton was a Fantastic Employee

23. Finkton is a former employee of Defendants.

24. Cellco employed Finkton as a Retail Sales Representative and Solutions Specialist.

25. Finkton was qualified for each of her positions with Cellco.

26. Finkton was fully able to perform the essential functions of each of her positions with Cellco.

27. Finkton began working for Defendants on June 2, 2016 in Charleston, West Virginia.

28. In the first four months of her employment, Finkton was first or second in her district for highest total sales.

29. Finkton had no issues whatsoever while working in West Virginia for Cellco.

30. In or around October 2016, Finkton was given a two-year contract and a raise to relocate to Cincinnati and help open a new store in Tri-County.

31. From the time Finkton started at the Tri-County location until October 2017, Finkton always met her sales goals and continuously received raises.

32. In or around October 2017, Finkton was asked to transfer to another Cellco store opening on Liberty Way.

33. At the Liberty Way location, Finkton continued her exceptional performance and was on track to go into management.

34. In or around early 2018, Finkton developed a kidney issue, but had no issues obtaining Family Medical Leave Act ("FMLA") paperwork and taking a month off to recover.

### B. Finkton's Protected Class

35. Finkton is African American, placing her within a protected class based on her race.

36. Finkton is a cisgender woman, placing her within a protected class based on her gender.

### C. Finkton Received her First Write-Up due to a Data Entry Error

37. Finkton received her first write-up in or around January 2019 for poor pull through numbers.

38. Pull through numbers refer to a sales representatives' ability to sell accessories to customers in addition to whatever they came into the store to purchase.

39. Finkton disputed this write-up by proving the recorded numbers were incorrect, and management was able to adjust the numbers appropriately.

40. Despite the adjustment, Finkton was still made to sign the write-up.

41. Later, it came to light that Human Resources ("HR") had mis-recorded pull through numbers for many people that month; disparately, Finkton was the only person given a write-up.

### D. Finkton Began Working Under and Experiencing Disparate Treatment from Defendants Sigrist and Flynn.

42. In or around April 2019, Finkton was transferred to Cellco's Fairfield location, and began working under General Manager Defendant Sigrist and District Manager Defendant Flynn.

43. Flynn had a reputation for baselessly firing employees, creating many lawsuits as a result.

44. In or around May 2019, Finkton took approved time off work.

45. Despite Finkton vacation keeping her away from work for one week, Flynn still held Finkton to the same monthly sales quotas.

46. As a result, Finkton finished last in sales for the store that month.

47. This report hurt Finkton's performance numbers.

48. Additionally, Finkton received a write-up from Flynn when she returned to work.

49. The write-up detailed that Finkton had poor pull through numbers again; however, the work was neither poor nor recent.

50. The write-up detailed that Finkton's pull through numbers were around 28%, but the company standard for pull through numbers was 22%.

51. Finkton was performing six percentage points higher than the company standard, but Flynn imposed a 30% standard.

52. Further, the work that the write-up referenced was done at the Liberty Way location, not the Fairfield location.

53. Finkton disputed the write-up.

54. In or around July 2019, Finkton received a final written warning from Flynn, despite once again satisfying company standards for pull through numbers (she was at 26% and the requirement was still 22%).

55. On or around July 25, 2019, Finkton came to work three minutes after her shift was scheduled to start.

56. Cellco has a five minute-window policy, that says employees have a five minute-window after the time their shift is scheduled to start to clock in before being counted late.

57. Therefore, Finkton was not yet late by coming in three minutes after her shift was scheduled to start.

58. Finkton asked her coworker to hand her a company tablet so that she could clock in.

59. Sigrist intercepted the tablet and demanded that Finkton be completely ready to work before clocking in.

60. Sigrist deemed Finkton "not completely ready to work," because she was still holding personal items.

61. Up until this incident, Finkton had always been permitted to clock in immediately after arriving for her shift and had never been expected to set her personal items down first.

62. Disparately, no other employees were held to this standard.

63. Despite this incident, Finkton was still able to clock in within the five minute-window.

64.  Later that day, Sigrist approached Finkton and claimed Finkton had been late for her shift numerous times within the past month.

65. Finkton disputed this and asked Sigrist to elaborate.

66. Sigrist explained that while she had not checked the entire month, the records showed that Finkton had clocked in one or two minutes after her shift was scheduled to start multiple times that month.

67. Finkton then asked Sigrist if she had been closely observing her, or if the incident from that morning prompted Sigrist's investigation into her clock-in times.

68. Sigrist admitted that she had been prompted to check Finkton's clock-in times based on the incident that morning.

69. Because of Cellco's five minute-window policy, Finkton was never actually late for any of her shifts.

70. Additionally, some of the days that Sigrist flagged were days that the manager had been late which prevented any of the sales representatives from entering the locked store let alone from clocking in.

71. Sigrist disparately did not perform similar clock-in checks for any of the other employees outside Finkton's protected class.

72. From that point onward, Sigrist would say things like "do you even want to be here," "you're just trying to get fired from unemployment benefits," and "I know you're just here until you get your Masters Degree and then you'll leave," to Finkton, implying that Finkton was a poor performing employee who should just resign.

**E. Finkton Properly Filed a Complaint with HR Regarding the Disparate Treatment from Flynn and Sigrist**

73. On or around August 16, 2020, Finkton spoke on the phone with the District HR Director, Julie Boggs, concerning the disparate treatment she had been receiving from Flynn and Sigrist.

74. This phone conversation constituted a protected complaint of discrimination.

75. Finkton cited her race and her gender as the reasons for the disparate treatment.

76. Finkton further explained that on each of her write-ups there were alarming lists of observation scores.

77. The observation scores referred to regularly performed observations, where managers would randomly choose a few times every month to simply observe a sales representative and rate their overall sales performance.

78. Finkton's observation lists showed that she was being observed six or seven times more often that any of her other coworkers

79. Therefore, Finkton was being singled out by Flynn and Sigrist.

80. Additionally, Finkton explained that she was more frequently being scheduled to work an opening and closing shift in the same day than her coworkers.

81. Having an opening and a closing shift in the same day was extremely physically taxing.

82. Finkton concluded by stating that her Caucasian male coworkers were frequently late and performing worse than she was yet were not being written up.

83. Boggs said she would investigate the situation over the next two weeks.

84. On or around August 29, 2019, Boggs called Finkton and explained that her investigation did not find any wrongdoing on the part of Cellco, Flynn, or Sigrist and that Finkton was receiving fair documentation when compared to her coworkers.

85. Subsequently, Finkton asked a coworker (Josh Ellis) about his observation lists.

86. Ellis shared his observation lists for the months of April through August.

87. Finkton found that Ellis had been observed eleven times as compared to Finkton's 29 times; this contradicted Boggs' conclusion that Finkton had received fair documentation in comparison to her coworkers.

### F. Finkton Filed a Claim with the EEOC

88. In or around mid-August 2019, Finkton filed a Charge with the EEOC denoting discrimination based on her gender and race and retaliation against her for protected complaints.

### G. Finkton's Employment Was Suddenly Placed Under Official Review

89. On or around September 10, 2019, Finkton was called into Sigrist's office and told her employment was officially under review for potential termination.

90. As she had never heard of an official employment review before, Finkton requested the Cellco company policy regarding this review.

91. Sigrist said there was no policy.

92. Confused, Finkton asked how the review was supposed to work.

93. Sigrist explained that Boggs and Flynn would be carefully reviewing Finkton's employment moving forward.

94. Finkton reached out to an area manager and Regional Manager, Pat LNU, to ask if similar review programs were implemented at their stores.

95. Both the area manager and Pat LNU said they had never heard of such review programs.

### H. Cellco Denies Finkton's Requested Transfer

96. After talking with Finkton, the area manager suggested Finkton come work at her location because she believed Finkton's performance numbers were fantastic.

97. Finkton requested a transfer to the area manager's location.

98. Boggs denied her request, citing that she could not transfer Finkton because she was under ongoing discipline.

99. However, Finkton was transferred from the Liberty Way location to the Fairfield location while under ongoing discipline.

100.   Therefore, Bogg's decision not to transfer Finkton was completely discretionary.

### I. Cellco Denies Finkton the Ability to Apply for Other Positions

101.   Finkton attempted to simply apply to other positions within the company at the area manager's location.

102.   Boggs denied Finkton's applications because she was under ongoing discipline.

103.   When Finkton disputed this, Sigrist told her that if Finkton quit her job she could reapply after a year or so, but if she was terminated from her employment it is likely she would never be rehired again.

104.   Finkton asked Sigrist why she could not just apply now, and if Sigrist was attempting to intimidate her.

105.   Sigrist laughed at Finkton for asking that question and gave no useful response.

### J. Cellco Terminated Finkton's Employment

106.   On or around October 17, 2019, Finkton's employment was terminated.

107.   Sigrist, Finkton's Manager Andrew LNU, and Boggs were on the phone call when Finkton received the news.

108. Finkton asked for official documentation

109. Sigrist responded that there would not be any, but that she could provide Finkton with copies of her previous write-ups.

110. When Finkton pushed back, Sigrist said she would provide Finkton with appropriate documentation for insurance purposes.

111. When Finkton received the copies of her write-ups, they showed that from August 2019 through October 2019, Finkton had improved her performance numbers.

112. Cellco has a progressive discipline policy.

113. The official employment review that Finkton was placed under was not part of the progressive discipline policy.

114. Finkton was terminated without cause, after improving her work performance, as a result of a non-existent, discretionary review program separate from Cellco's official progressive disciplinary policy.

115. Cellco did not terminate Finkton's Caucasian, male coworkers who were performing objectively worse than her.

116. Cellco did not terminate Finkton's similarly situated coworkers who did not file protected complaints with HR and the EEOC.

117. Cellco did not terminate Finkton for poor work performance.

118. Cellco knowingly terminated Finkton's employment.

119. Cellco knowingly took adverse employment actions against Finkton.

120. Cellco intentionally terminated Finkton's employment.

121. Cellco intentionally took adverse employment actions against Finkton.

122. Cellco willfully terminated Finkton's employment.

123. Cellco willfully took an adverse employment action against Finkton.

124. Cellco knows that terminating Finkton's employment without cause and after she objectively improved her performance would cause Finkton harm up to and including economic harm.

125. Cellco terminated Finkton's employment because she is African American.

126. Cellco terminated Finkton's employment because she is a cisgender woman.

127. Cellco terminated Finkton's employment in retaliation for filing protected complaints with HR.

128. Cellco terminated Finkton's employment in retaliation against filing an EEOC charge.

129. As a result of Cellco's actions, Finkton suffered and will continue to suffer monetary and emotional damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

130. Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Throughout her employment, Finkton was fully competent to perform her essential job duties.

132. Defendants treated Finkton differently than other similarly situated employees based on her race.

133. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Finkton due to her race.

134. On or about October 17, 2019, Defendants terminated Finkton without just cause.

135. Defendants' purported reason for Finkton's termination was pretextual.

136.    At all times material herein, similarly situated non-African American employees were not terminated without just cause.

137.    Defendant's terminated Finkton based on her race.

138.    Defendants violated R.C. § 4112.01 *et seq.* when they terminated Finkton based on her race.

139.    Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

140.    As a direct and proximate result of Defendant's conduct, Finkton has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

141.    Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

142.    Finkton is African-American, and thus is in a protected class for her race.

143.    Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

144.    Cellco treated Finkton differently than other similarly situated employees based upon her race.

145.    Cellco's termination of Finkton's employment was an adverse employment action against her.

146.    Cellco's purported reason for Finkton's employment termination was pretextual.

147.    Cellco actually terminated Finkton's employment due to her race.

148.    Cellco violation Title VII by terminating Finkton's employment because of her race.

149.    Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

150.    Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's race.

151.    Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's race.

152.    Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

153.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

## **COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

154.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155.    Finkton is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

156.    Defendants treated Finkton differently than other similarly situated employees based on her gender.

157.    Defendants discriminated against Finkton on the basis of her gender throughout her employment with Defendants.

158.    Defendants terminated Finkton's employment without just cause.

159.    Defendants terminated Finkton's employment based on her gender.

160.    Defendants' discrimination against Finkton based on her gender violates R.C. § 4112.01 *et seq.*

161.    Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled

emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

162.    As a direct and proximate result of Defendants' conduct, Finkton suffered and will continue

to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

163.    Finkton restates each and every prior paragraph of this Complaint, as if they were fully

restated herein.

164.    Finkton is a cisgender woman, and thus is in a protected class for her gender.

165.    Title VII provides that it is an unlawful discriminatory practice for an employer to

discriminate against an employee on the basis of the employee's gender.

166.    Cellco treated Finkton differently than other similarly situated employees based upon her

gender.

167.    Cellco's termination of Finkton's employment was an adverse employment action against

her.

168.    Cellco's purported reason for Finkton's employment termination was pretextual.

169.    Cellco actually terminated Finkton's employment due to her gender.

170.    Cellco violation Title VII by terminating Finkton's employment because of her gender.

171.    Cellco violated Title VII by treating Finkton differently from other similarly situated

employees outside her protected class.

172.    Cellco violated Title VII by applying its employment policies in a disparate manner

based on Finkton's gender.

173.    Cellco violated Title VII by applying its disciplinary policies in a disparate manner based

on Finkton's gender.

174.    Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

175.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

176.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

177.    As a result of the Defendant's discriminatory conduct described above, Finkton complained about the disparate treatment she was experiencing from Flynn and Sigrist to HR and filed an EEOC charge.

178.    Subsequent to Finkton reporting the disparate treatment from Flynn and Sigrist to HR and filing an EEOC charge, Finkton was placed on an official employment review.

179.    When Finkton reached out to other branches, this employment review program did not exist anywhere else.

180.    When Finkton asked Sigrist for the exact company policy where this employment review program existed, Sigrist explained that there was no official company policy.

181.    The official employment review program was a discretionary program implemented and perpetuated by Sigrist, Flynn, and Boggs.

182.    The official employment review program imposed expectations on Finkton that were greater than the company-wide policy.

183.    The official employment review program subjected Finkton to more frequent observations from Flynn and Boggs.

184. Finkton was placed on this discretionary program for reporting the disparate treatment to HR and for filing the EEOC charge.

185. Finkton's employment was terminated on or around October 17, 2019 even though documentation from the discretionary program showed that her performance was improving.

186. Defendant's actions were retaliatory in nature based on Finkton's opposition to the unlawful discriminatory conduct.

187. Pursuant to R.C. § 4112 *et seq*. and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

188. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Finkton's employment, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### **DEMAND FOR RELIEF**

WHEREFORE, Finkton demands from Defendants the following:

a) Issue an order requiring Defendants to restore Finkton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

b) An award against each Defendant of compensatory and monetary damages to compensate Finkton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Finkton's claims as allowable under law;

e)   An award of the taxable costs of this action; and

f)   An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**The Spitz Law Firm**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email:  Matthew.Bruce@SpitzLawFirm.com
Email:  Evan.McFarland@SpitsLawFirm.com

*Attorney for Plaintiff Tiffany Finkton*

## JURY DEMAND

Plaintiff Tiffany Finkton demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)

COPY

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


TIFFANY FINKTON
   **PLAINTIFF**

                                                              Use below number on
                                                              all future pleadings

       -- vs --

                                               No.  A 2004437
                                                            SUMMONS

CELLCO PARTNERSHIP DBA VERIZON
    **DEFENDANT**


        BOB FLYNN
        CO CELLCO PARTNERSHIP             D - 2
        3324 PRINCETON RD
        HAMILTON OH 45011


You are notified
that you have been named Defendant(s) in a complaint filed by

        TIFFANY FINKTON
        3213 ROESCH BLVD EAST APT E
        FAIRFIELD OH 45014

                                                                 Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney            AFTAB PUREVAL
MATTHEW G BRUCE                    Clerk, Court of Common Pleas
11260 CHESTER ROAD                 Hamilton County, Ohio
SUITE 825
CINCINNATI       OH       45246

                                       By  RICK HOFMANN
                                                    Deputy

                                     Date:   December 21, 2020

D130611778



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
December 18, 2020 04:01 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1017176

**TIFFANY FINKTON**                    **A 2004437**

vs.

**CELLCO PARTNERSHIP DBA
VERIZON**

## FILING TYPE:  INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 19

EFR200

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| TIFFANY FINKTON | ) | CASE NO. |
| 3213 Roesch Blvd. East, Apt. E | ) | |
| Fairfield, OH 45014 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| CELLCO PARTNERSHIP | ) | |
| d/b/a Verizon | ) | **JURY DEMAND ENDORSED** |
| 3324 Princeton Rd, | ) | **HEREIN** |
| Hamilton, OH 45011 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| CELLCO PARTNERSHIP | ) | |
| c/o CT Corp. System (Stat. agent) | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| BOB FLYNN | ) | |
| c/o Cellco Partnership | ) | |
| 3324 Princeton Rd, | ) | |
| Hamilton, OH 45011 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JILLIAN SIGRIST | ) | |
| c/o Cellco Partnership | ) | |
| 3324 Princeton Rd, | ) | |
| Hamilton, OH 45011 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tiffany Finkton, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

## PARTIES

1. Tiffany Finkton ("Finkton") is a resident of the city of Fairfield, county of Butler, state of Ohio.

2. Cellco Partnership ("Cellco") is a for profit corporation company that conducts business throughout the state. The relevant location where the events and omission of the Complaint took place was 3324 Princeton Road, Hamilton, Ohio 45011 and at Cellco's other locations.

3. Cellco is, and was at all time hereinafter mentioned, Finkton's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e and R.C. § 4112.01(A)(2).

4. Defendant Bob Flynn ("Flynn") is a resident of the state of Ohio, upon information and belief.

5. Flynn was, at all time hereinafter mentioned, an individual who was a District Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Flynn's employment.

6. Cellco employed Flynn in the position of District Manager.

7. Flynn was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq.*

8. Flynn made, and/or participated in, the adverse actions asserted, herein.

9. Defendant Jillian Sigrist ("Sigrist") is a resident of the state of Ohio, upon information and belief.

10. Sigrist was, at all times hereinafter mentioned, an individual who was a General Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Sigrist's employment.

11. Cellco employed Sigrist in the position of General Manager.

12. Sigrist was, at all times hereafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

13. Sigrist made, and/or participated in the adverse actions asserted, herein.

## JURISDICTION AND VENUE

14. The material events alleged in this Complaint occurred in Hamilton County and at Cellco's other locations.

15. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (2) and (3).

16. Venue is proper pursuant to Civ. R. (3)(C)(1), (2), (3), and/or (6).

17. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

18. Within 180 days of the conduct alleged below, Finkton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-01844).

19. On or about October 15, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Finkton regarding the EEOC Charge.

20. Finkton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

21. Finkton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

22. Finkton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Finkton was a Fantastic Employee

23. Finkton is a former employee of Defendants.

24. Cellco employed Finkton as a Retail Sales Representative and Solutions Specialist.

25. Finkton was qualified for each of her positions with Cellco.

26. Finkton was fully able to perform the essential functions of each of her positions with Cellco.

27. Finkton began working for Defendants on June 2, 2016 in Charleston, West Virginia.

28. In the first four months of her employment, Finkton was first or second in her district for highest total sales.

29. Finkton had no issues whatsoever while working in West Virginia for Cellco.

30. In or around October 2016, Finkton was given a two-year contract and a raise to relocate to Cincinnati and help open a new store in Tri-County.

31. From the time Finkton started at the Tri-County location until October 2017, Finkton always met her sales goals and continuously received raises.

32. In or around October 2017, Finkton was asked to transfer to another Cellco store opening on Liberty Way.

33. At the Liberty Way location, Finkton continued her exceptional performance and was on track to go into management.

34. In or around early 2018, Finkton developed a kidney issue, but had no issues obtaining Family Medical Leave Act ("FMLA") paperwork and taking a month off to recover.

### B. Finkton's Protected Class

35. Finkton is African American, placing her within a protected class based on her race.

36. Finkton is a cisgender woman, placing her within a protected class based on her gender.

### C. Finkton Received her First Write-Up due to a Data Entry Error

37. Finkton received her first write-up in or around January 2019 for poor pull through numbers.

38. Pull through numbers refer to a sales representatives' ability to sell accessories to customers in addition to whatever they came into the store to purchase.

39. Finkton disputed this write-up by proving the recorded numbers were incorrect, and management was able to adjust the numbers appropriately.

40. Despite the adjustment, Finkton was still made to sign the write-up.

41. Later, it came to light that Human Resources ("HR") had mis-recorded pull through numbers for many people that month; disparately, Finkton was the only person given a write-up.

### D. Finkton Began Working Under and Experiencing Disparate Treatment from Defendants Sigrist and Flynn.

42. In or around April 2019, Finkton was transferred to Cellco's Fairfield location, and began working under General Manager Defendant Sigrist and District Manager Defendant Flynn.

43. Flynn had a reputation for baselessly firing employees, creating many lawsuits as a result.

44. In or around May 2019, Finkton took approved time off work.

45. Despite Finkton vacation keeping her away from work for one week, Flynn still held Finkton to the same monthly sales quotas.

46. As a result, Finkton finished last in sales for the store that month.

47. This report hurt Finkton's performance numbers.

48. Additionally, Finkton received a write-up from Flynn when she returned to work.

49. The write-up detailed that Finkton had poor pull through numbers again; however, the work was neither poor nor recent.

50. The write-up detailed that Finkton's pull through numbers were around 28%, but the company standard for pull through numbers was 22%.

51. Finkton was performing six percentage points higher than the company standard, but Flynn imposed a 30% standard.

52. Further, the work that the write-up referenced was done at the Liberty Way location, not the Fairfield location.

53. Finkton disputed the write-up.

54. In or around July 2019, Finkton received a final written warning from Flynn, despite once again satisfying company standards for pull through numbers (she was at 26% and the requirement was still 22%).

55. On or around July 25, 2019, Finkton came to work three minutes after her shift was scheduled to start.

56. Cellco has a five minute-window policy, that says employees have a five minute-window after the time their shift is scheduled to start to clock in before being counted late.

57. Therefore, Finkton was not yet late by coming in three minutes after her shift was scheduled to start.

58. Finkton asked her coworker to hand her a company tablet so that she could clock in.

59. Sigrist intercepted the tablet and demanded that Finkton be completely ready to work before clocking in.

60. Sigrist deemed Finkton "not completely ready to work," because she was still holding personal items.

61. Up until this incident, Finkton had always been permitted to clock in immediately after arriving for her shift and had never been expected to set her personal items down first.

62. Disparately, no other employees were held to this standard.

63. Despite this incident, Finkton was still able to clock in within the five minute-window.

64. Later that day, Sigrist approached Finkton and claimed Finkton had been late for her shift numerous times within the past month.

65. Finkton disputed this and asked Sigrist to elaborate.

66. Sigrist explained that while she had not checked the entire month, the records showed that Finkton had clocked in one or two minutes after her shift was scheduled to start multiple times that month.

67. Finkton then asked Sigrist if she had been closely observing her, or if the incident from that morning prompted Sigrist's investigation into her clock-in times.

68. Sigrist admitted that she had been prompted to check Finkton's clock-in times based on the incident that morning.

69. Because of Cellco's five minute-window policy, Finkton was never actually late for any of her shifts.

70. Additionally, some of the days that Sigrist flagged were days that the manager had been late which prevented any of the sales representatives from entering the locked store let alone from clocking in.

71. Sigrist disparately did not perform similar clock-in checks for any of the other employees outside Finkton's protected class.

72. From that point onward, Sigrist would say things like "do you even want to be here," "you're just trying to get fired from unemployment benefits," and "I know you're just here until you get your Masters Degree and then you'll leave," to Finkton, implying that Finkton was a poor performing employee who should just resign.

**E. Finkton Properly Filed a Complaint with HR Regarding the Disparate Treatment from Flynn and Sigrist**

73. On or around August 16, 2020, Finkton spoke on the phone with the District HR Director, Julie Boggs, concerning the disparate treatment she had been receiving from Flynn and Sigrist.

74. This phone conversation constituted a protected complaint of discrimination.

75. Finkton cited her race and her gender as the reasons for the disparate treatment.

76. Finkton further explained that on each of her write-ups there were alarming lists of observation scores.

77. The observation scores referred to regularly performed observations, where managers would randomly choose a few times every month to simply observe a sales representative and rate their overall sales performance.

78. Finkton's observation lists showed that she was being observed six or seven times more often that any of her other coworkers

79. Therefore, Finkton was being singled out by Flynn and Sigrist.

80. Additionally, Finkton explained that she was more frequently being scheduled to work an opening and closing shift in the same day than her coworkers.

81. Having an opening and a closing shift in the same day was extremely physically taxing.

82. Finkton concluded by stating that her Caucasian male coworkers were frequently late and performing worse than she was yet were not being written up.

83. Boggs said she would investigate the situation over the next two weeks.

84. On or around August 29, 2019, Boggs called Finkton and explained that her investigation did not find any wrongdoing on the part of Cellco, Flynn, or Sigrist and that Finkton was receiving fair documentation when compared to her coworkers.

85. Subsequently, Finkton asked a coworker (Josh Ellis) about his observation lists.

86. Ellis shared his observation lists for the months of April through August.

87. Finkton found that Ellis had been observed eleven times as compared to Finkton's 29 times; this contradicted Boggs' conclusion that Finkton had received fair documentation in comparison to her coworkers.

### F. Finkton Filed a Claim with the EEOC

88. In or around mid-August 2019, Finkton filed a Charge with the EEOC denoting discrimination based on her gender and race and retaliation against her for protected complaints.

### G. Finkton's Employment Was Suddenly Placed Under Official Review

89. On or around September 10, 2019, Finkton was called into Sigrist's office and told her employment was officially under review for potential termination.

90. As she had never heard of an official employment review before, Finkton requested the Cellco company policy regarding this review.

91. Sigrist said there was no policy.

92. Confused, Finkton asked how the review was supposed to work.

93. Sigrist explained that Boggs and Flynn would be carefully reviewing Finkton's employment moving forward.

94. Finkton reached out to an area manager and Regional Manager, Pat LNU, to ask if similar review programs were implemented at their stores.

95. Both the area manager and Pat LNU said they had never heard of such review programs.

### H. Cellco Denies Finkton's Requested Transfer

96. After talking with Finkton, the area manager suggested Finkton come work at her location because she believed Finkton's performance numbers were fantastic.

97. Finkton requested a transfer to the area manager's location.

98. Boggs denied her request, citing that she could not transfer Finkton because she was under ongoing discipline.

99. However, Finkton was transferred from the Liberty Way location to the Fairfield location while under ongoing discipline.

100. Therefore, Bogg's decision not to transfer Finkton was completely discretionary.

### I. Cellco Denies Finkton the Ability to Apply for Other Positions

101. Finkton attempted to simply apply to other positions within the company at the area manager's location.

102. Boggs denied Finkton's applications because she was under ongoing discipline.

103. When Finkton disputed this, Sigrist told her that if Finkton quit her job she could reapply after a year or so, but if she was terminated from her employment it is likely she would never be rehired again.

104. Finkton asked Sigrist why she could not just apply now, and if Sigrist was attempting to intimidate her.

105. Sigrist laughed at Finkton for asking that question and gave no useful response.

### J. Cellco Terminated Finkton's Employment

106. On or around October 17, 2019, Finkton's employment was terminated.

107. Sigrist, Finkton's Manager Andrew LNU, and Boggs were on the phone call when Finkton received the news.

108. Finkton asked for official documentation

109. Sigrist responded that there would not be any, but that she could provide Finkton with copies of her previous write-ups.

110. When Finkton pushed back, Sigrist said she would provide Finkton with appropriate documentation for insurance purposes.

111. When Finkton received the copies of her write-ups, they showed that from August 2019 through October 2019, Finkton had improved her performance numbers.

112. Cellco has a progressive discipline policy.

113. The official employment review that Finkton was placed under was not part of the progressive discipline policy.

114. Finkton was terminated without cause, after improving her work performance, as a result of a non-existent, discretionary review program separate from Cellco's official progressive disciplinary policy.

115. Cellco did not terminate Finkton's Caucasian, male coworkers who were performing objectively worse than her.

116. Cellco did not terminate Finkton's similarly situated coworkers who did not file protected complaints with HR and the EEOC.

117. Cellco did not terminate Finkton for poor work performance.

118. Cellco knowingly terminated Finkton's employment.

119. Cellco knowingly took adverse employment actions against Finkton.

120. Cellco intentionally terminated Finkton's employment.

121. Cellco intentionally took adverse employment actions against Finkton.

122. Cellco willfully terminated Finkton's employment.

123. Cellco willfully took an adverse employment action against Finkton.

124. Cellco knows that terminating Finkton's employment without cause and after she objectively improved her performance would cause Finkton harm up to and including economic harm.

125. Cellco terminated Finkton's employment because she is African American.

126. Cellco terminated Finkton's employment because she is a cisgender woman.

127. Cellco terminated Finkton's employment in retaliation for filing protected complaints with HR.

128. Cellco terminated Finkton's employment in retaliation against filing an EEOC charge.

129. As a result of Cellco's actions, Finkton suffered and will continue to suffer monetary and emotional damages.

**COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

130. Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Throughout her employment, Finkton was fully competent to perform her essential job duties.

132. Defendants treated Finkton differently than other similarly situated employees based on her race.

133. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Finkton due to her race.

134. On or about October 17, 2019, Defendants terminated Finkton without just cause.

135. Defendants' purported reason for Finkton's termination was pretextual.

136.    At all times material herein, similarly situated non-African American employees were not terminated without just cause.

137.    Defendant's terminated Finkton based on her race.

138.    Defendants violated R.C. § 4112.01 *et seq.* when they terminated Finkton based on her race.

139.    Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

140.    As a direct and proximate result of Defendant's conduct, Finkton has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

141.    Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

142.    Finkton is African-American, and thus is in a protected class for her race.

143.    Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

144.    Cellco treated Finkton differently than other similarly situated employees based upon her race.

145.    Cellco's termination of Finkton's employment was an adverse employment action against her.

146.    Cellco's purported reason for Finkton's employment termination was pretextual.

147.    Cellco actually terminated Finkton's employment due to her race.

148.    Cellco violation Title VII by terminating Finkton's employment because of her race.

149.    Cellco violated Title VII by treating Finkton differently from other similarly situated
employees outside her protected class.

150.    Cellco violated Title VII by applying its employment policies in a disparate manner
based on Finkton's race.

151.    Cellco violated Title VII by applying its disciplinary policies in a disparate manner based
on Finkton's race.

152.    Finkton incurred emotional distress damages as a result of Cellco's conduct described
herein.

153.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and
will continue to suffer damages.

**COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

154.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully
restated herein.

155.    Finkton is a member of a statutorily protected class based on her gender under R.C. §
4112.02.

156.    Defendants treated Finkton differently than other similarly situated employees based on
her gender.

157.    Defendants discriminated against Finkton on the basis of her gender throughout her
employment with Defendants.

158.    Defendants terminated Finkton's employment without just cause.

159.    Defendants terminated Finkton's employment based on her gender.

160.    Defendants' discrimination against Finkton based on her gender violates R.C. § 4112.01 *et
seq.*

161. Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

162. As a direct and proximate result of Defendants' conduct, Finkton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII (Defendant Cellco Only)

163. Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

164. Finkton is a cisgender woman, and thus is in a protected class for her gender.

165. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's gender.

166. Cellco treated Finkton differently than other similarly situated employees based upon her gender.

167. Cellco's termination of Finkton's employment was an adverse employment action against her.

168. Cellco's purported reason for Finkton's employment termination was pretextual.

169. Cellco actually terminated Finkton's employment due to her gender.

170. Cellco violation Title VII by terminating Finkton's employment because of her gender.

171. Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

172. Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's gender.

173. Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's gender.

174. Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

175. As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

176. Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

177. As a result of the Defendant's discriminatory conduct described above, Finkton complained about the disparate treatment she was experiencing from Flynn and Sigrist to HR and filed an EEOC charge.

178. Subsequent to Finkton reporting the disparate treatment from Flynn and Sigrist to HR and filing an EEOC charge, Finkton was placed on an official employment review.

179. When Finkton reached out to other branches, this employment review program did not exist anywhere else.

180. When Finkton asked Sigrist for the exact company policy where this employment review program existed, Sigrist explained that there was no official company policy.

181. The official employment review program was a discretionary program implemented and perpetuated by Sigrist, Flynn, and Boggs.

182. The official employment review program imposed expectations on Finkton that were greater than the company-wide policy.

183. The official employment review program subjected Finkton to more frequent observations from Flynn and Boggs.

184. Finkton was placed on this discretionary program for reporting the disparate treatment to HR and for filing the EEOC charge.

185. Finkton's employment was terminated on or around October 17, 2019 even though documentation from the discretionary program showed that her performance was improving.

186. Defendant's actions were retaliatory in nature based on Finkton's opposition to the unlawful discriminatory conduct.

187. Pursuant to R.C. § 4112 *et seq.* and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

188. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Finkton's employment, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Finkton demands from Defendants the following:

a) Issue an order requiring Defendants to restore Finkton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

b) An award against each Defendant of compensatory and monetary damages to compensate Finkton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Finkton's claims as allowable under law;

e)  An award of the taxable costs of this action; and

f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
      Trial Attorney
Evan R. McFarland (0096953)
**The Spitz Law Firm**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitsLawFirm.com

*Attorney for Plaintiff Tiffany Finkton*

## JURY DEMAND

Plaintiff Tiffany Finkton demands a trial by jury by the maximum number of jurors permitted.

                              /s/ Matthew G. Bruce
                              Matthew Bruce (0083769)

COPY

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


TIFFANY FINKTON
    **PLAINTIFF**

                                           Use below number on
                                           all future pleadings

       -- vs --

                               No.  A 2004437
                                   SUMMONS

CELLCO PARTNERSHIP DBA VERIZON
    **DEFENDANT**


       JILLIAN SIGRIST
       CO CELLCO PARTNERSHIP            D - 3
       3324 PRINCETON RD
       HAMILTON OH 45011



You are notified
that you have been named Defendant(s) in a complaint filed by

       TIFFANY FINKTON
       3213 ROESCH BLVD EAST APT E
       FAIRFIELD OH 45014

                                            Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.



Name and Address of attorney          AFTAB PUREVAL
MATTHEW G BRUCE                   Clerk, Court of Common Pleas
11260 CHESTER ROAD                 Hamilton County, Ohio
SUITE 825
CINCINNATI       OH       45246

                             By  RICK HOFMANN
                                         Deputy

                              Date:    December 21, 2020

D130611799



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
December 18, 2020 04:01 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1017176

**TIFFANY FINKTON**                    A 2004437

vs.

**CELLCO PARTNERSHIP DBA
VERIZON**

## FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 19

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIFFANY FINKTON<br>3213 Roesch Blvd. East, Apt. E<br>Fairfield, OH 45014 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| CELLCO PARTNERSHIP<br>d/b/a Verizon<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| Serve Also:<br>CELLCO PARTNERSHIP<br>c/o CT Corp. System (Stat. agent)<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| BOB FLYNN<br>c/o Cellco Partnership<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | |
| -and- | ) ) | |
| JILLIAN SIGRIST<br>c/o Cellco Partnership<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Tiffany Finkton, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

## PARTIES

1. Tiffany Finkton ("Finkton") is a resident of the city of Fairfield, county of Butler, state of Ohio.

2. Cellco Partnership ("Cellco") is a for profit corporation company that conducts business throughout the state. The relevant location where the events and omission of the Complaint took place was 3324 Princeton Road, Hamilton, Ohio 45011 and at Cellco's other locations.

3. Cellco is, and was at all time hereinafter mentioned, Finkton's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e and R.C. § 4112.01(A)(2).

4. Defendant Bob Flynn ("Flynn") is a resident of the state of Ohio, upon information and belief.

5. Flynn was, at all time hereinafter mentioned, an individual who was a District Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Flynn's employment.

6. Cellco employed Flynn in the position of District Manager.

7. Flynn was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq.*

8. Flynn made, and/or participated in, the adverse actions asserted, herein.

9. Defendant Jillian Sigrist ("Sigrist") is a resident of the state of Ohio, upon information and belief.

10. Sigrist was, at all times hereinafter mentioned, an individual who was a General Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Sigrist's employment.

11. Cellco employed Sigrist in the position of General Manager.

12. Sigrist was, at all times hereafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

13. Sigrist made, and/or participated in the adverse actions asserted, herein.

## JURISDICTION AND VENUE

14. The material events alleged in this Complaint occurred in Hamilton County and at Cellco's other locations.

15. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (2) and (3).

16. Venue is proper pursuant to Civ. R. (3)(C)(1), (2), (3), and/or (6).

17. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

18. Within 180 days of the conduct alleged below, Finkton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-01844).

19. On or about October 15, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Finkton regarding the EEOC Charge.

20. Finkton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

21. Finkton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

22. Finkton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Finkton was a Fantastic Employee

23. Finkton is a former employee of Defendants.

24. Cellco employed Finkton as a Retail Sales Representative and Solutions Specialist.

25. Finkton was qualified for each of her positions with Cellco.

26. Finkton was fully able to perform the essential functions of each of her positions with Cellco.

27. Finkton began working for Defendants on June 2, 2016 in Charleston, West Virginia.

28. In the first four months of her employment, Finkton was first or second in her district for highest total sales.

29. Finkton had no issues whatsoever while working in West Virginia for Cellco.

30. In or around October 2016, Finkton was given a two-year contract and a raise to relocate to Cincinnati and help open a new store in Tri-County.

31. From the time Finkton started at the Tri-County location until October 2017, Finkton always met her sales goals and continuously received raises.

32. In or around October 2017, Finkton was asked to transfer to another Cellco store opening on Liberty Way.

33. At the Liberty Way location, Finkton continued her exceptional performance and was on track to go into management.

34. In or around early 2018, Finkton developed a kidney issue, but had no issues obtaining Family Medical Leave Act ("FMLA") paperwork and taking a month off to recover.

### B. Finkton's Protected Class

35. Finkton is African American, placing her within a protected class based on her race.

36. Finkton is a cisgender woman, placing her within a protected class based on her gender.

### C. Finkton Received her First Write-Up due to a Data Entry Error

37. Finkton received her first write-up in or around January 2019 for poor pull through numbers.

38. Pull through numbers refer to a sales representatives' ability to sell accessories to customers in addition to whatever they came into the store to purchase.

39. Finkton disputed this write-up by proving the recorded numbers were incorrect, and management was able to adjust the numbers appropriately.

40. Despite the adjustment, Finkton was still made to sign the write-up.

41. Later, it came to light that Human Resources ("HR") had mis-recorded pull through numbers for many people that month; disparately, Finkton was the only person given a write-up.

### D. Finkton Began Working Under and Experiencing Disparate Treatment from Defendants Sigrist and Flynn.

42. In or around April 2019, Finkton was transferred to Cellco's Fairfield location, and began working under General Manager Defendant Sigrist and District Manager Defendant Flynn.

43. Flynn had a reputation for baselessly firing employees, creating many lawsuits as a result.

44. In or around May 2019, Finkton took approved time off work.

45. Despite Finkton vacation keeping her away from work for one week, Flynn still held Finkton to the same monthly sales quotas.

46. As a result, Finkton finished last in sales for the store that month.

47. This report hurt Finkton's performance numbers.

48. Additionally, Finkton received a write-up from Flynn when she returned to work.

49. The write-up detailed that Finkton had poor pull through numbers again; however, the work was neither poor nor recent.

50. The write-up detailed that Finkton's pull through numbers were around 28%, but the company standard for pull through numbers was 22%.

51. Finkton was performing six percentage points higher than the company standard, but Flynn imposed a 30% standard.

52. Further, the work that the write-up referenced was done at the Liberty Way location, not the Fairfield location.

53. Finkton disputed the write-up.

54. In or around July 2019, Finkton received a final written warning from Flynn, despite once again satisfying company standards for pull through numbers (she was at 26% and the requirement was still 22%).

55. On or around July 25, 2019, Finkton came to work three minutes after her shift was scheduled to start.

56. Cellco has a five minute-window policy, that says employees have a five minute-window after the time their shift is scheduled to start to clock in before being counted late.

57. Therefore, Finkton was not yet late by coming in three minutes after her shift was scheduled to start.

58. Finkton asked her coworker to hand her a company tablet so that she could clock in.

59. Sigrist intercepted the tablet and demanded that Finkton be completely ready to work before clocking in.

60. Sigrist deemed Finkton "not completely ready to work," because she was still holding personal items.

61. Up until this incident, Finkton had always been permitted to clock in immediately after arriving for her shift and had never been expected to set her personal items down first.

62. Disparately, no other employees were held to this standard.

63. Despite this incident, Finkton was still able to clock in within the five minute-window.

64. Later that day, Sigrist approached Finkton and claimed Finkton had been late for her shift numerous times within the past month.

65. Finkton disputed this and asked Sigrist to elaborate.

66. Sigrist explained that while she had not checked the entire month, the records showed that Finkton had clocked in one or two minutes after her shift was scheduled to start multiple times that month.

67. Finkton then asked Sigrist if she had been closely observing her, or if the incident from that morning prompted Sigrist's investigation into her clock-in times.

68. Sigrist admitted that she had been prompted to check Finkton's clock-in times based on the incident that morning.

69. Because of Cellco's five minute-window policy, Finkton was never actually late for any of her shifts.

70. Additionally, some of the days that Sigrist flagged were days that the manager had been late which prevented any of the sales representatives from entering the locked store let alone from clocking in.

71. Sigrist disparately did not perform similar clock-in checks for any of the other employees outside Finkton's protected class.

72. From that point onward, Sigrist would say things like "do you even want to be here," "you're just trying to get fired from unemployment benefits," and "I know you're just here until you get your Masters Degree and then you'll leave," to Finkton, implying that Finkton was a poor performing employee who should just resign.

**E. Finkton Properly Filed a Complaint with HR Regarding the Disparate Treatment from Flynn and Sigrist**

73. On or around August 16, 2020, Finkton spoke on the phone with the District HR Director, Julie Boggs, concerning the disparate treatment she had been receiving from Flynn and Sigrist.

74. This phone conversation constituted a protected complaint of discrimination.

75. Finkton cited her race and her gender as the reasons for the disparate treatment.

76. Finkton further explained that on each of her write-ups there were alarming lists of observation scores.

77. The observation scores referred to regularly performed observations, where managers would randomly choose a few times every month to simply observe a sales representative and rate their overall sales performance.

78. Finkton's observation lists showed that she was being observed six or seven times more often that any of her other coworkers

79. Therefore, Finkton was being singled out by Flynn and Sigrist.

80. Additionally, Finkton explained that she was more frequently being scheduled to work an opening and closing shift in the same day than her coworkers.

81. Having an opening and a closing shift in the same day was extremely physically taxing.

82. Finkton concluded by stating that her Caucasian male coworkers were frequently late and performing worse than she was yet were not being written up.

83. Boggs said she would investigate the situation over the next two weeks.

84. On or around August 29, 2019, Boggs called Finkton and explained that her investigation did not find any wrongdoing on the part of Cellco, Flynn, or Sigrist and that Finkton was receiving fair documentation when compared to her coworkers.

85. Subsequently, Finkton asked a coworker (Josh Ellis) about his observation lists.

86. Ellis shared his observation lists for the months of April through August.

87. Finkton found that Ellis had been observed eleven times as compared to Finkton's 29 times; this contradicted Boggs' conclusion that Finkton had received fair documentation in comparison to her coworkers.

### F. Finkton Filed a Claim with the EEOC

88. In or around mid-August 2019, Finkton filed a Charge with the EEOC denoting discrimination based on her gender and race and retaliation against her for protected complaints.

### G. Finkton's Employment Was Suddenly Placed Under Official Review

89. On or around September 10, 2019, Finkton was called into Sigrist's office and told her employment was officially under review for potential termination.

90. As she had never heard of an official employment review before, Finkton requested the Cellco company policy regarding this review.

91. Sigrist said there was no policy.

92. Confused, Finkton asked how the review was supposed to work.

93. Sigrist explained that Boggs and Flynn would be carefully reviewing Finkton's employment moving forward.

94. Finkton reached out to an area manager and Regional Manager, Pat LNU, to ask if similar review programs were implemented at their stores.

95. Both the area manager and Pat LNU said they had never heard of such review programs.

### H. Cellco Denies Finkton's Requested Transfer

96. After talking with Finkton, the area manager suggested Finkton come work at her location

because she believed Finkton's performance numbers were fantastic.

97. Finkton requested a transfer to the area manager's location.

98. Boggs denied her request, citing that she could not transfer Finkton because she was under

ongoing discipline.

99. However, Finkton was transferred from the Liberty Way location to the Fairfield location

while under ongoing discipline.

100.    Therefore, Bogg's decision not to transfer Finkton was completely discretionary.

### I. Cellco Denies Finkton the Ability to Apply for Other Positions

101.    Finkton attempted to simply apply to other positions within the company at the area

manager's location.

102.    Boggs denied Finkton's applications because she was under ongoing discipline.

103.    When Finkton disputed this, Sigrist told her that if Finkton quit her job she could reapply

after a year or so, but if she was terminated from her employment it is likely she would never

be rehired again.

104.    Finkton asked Sigrist why she could not just apply now, and if Sigrist was attempting to

intimidate her.

105.    Sigrist laughed at Finkton for asking that question and gave no useful response.

### J. Cellco Terminated Finkton's Employment

106.    On or around October 17, 2019, Finkton's employment was terminated.

107.    Sigrist, Finkton's Manager Andrew LNU, and Boggs were on the phone call when

Finkton received the news.

108.    Finkton asked for official documentation

109.    Sigrist responded that there would not be any, but that she could provide Finkton with copies of her previous write-ups.

110.    When Finkton pushed back, Sigrist said she would provide Finkton with appropriate documentation for insurance purposes.

111.    When Finkton received the copies of her write-ups, they showed that from August 2019 through October 2019, Finkton had improved her performance numbers.

112.    Cellco has a progressive discipline policy.

113.    The official employment review that Finkton was placed under was not part of the progressive discipline policy.

114.    Finkton was terminated without cause, after improving her work performance, as a result of a non-existent, discretionary review program separate from Cellco's official progressive disciplinary policy.

115.    Cellco did not terminate Finkton's Caucasian, male coworkers who were performing objectively worse than her.

116.    Cellco did not terminate Finkton's similarly situated coworkers who did not file protected complaints with HR and the EEOC.

117.    Cellco did not terminate Finkton for poor work performance.

118.    Cellco knowingly terminated Finkton's employment.

119.    Cellco knowingly took adverse employment actions against Finkton.

120.    Cellco intentionally terminated Finkton's employment.

121.    Cellco intentionally took adverse employment actions against Finkton.

122.    Cellco willfully terminated Finkton's employment.

123.    Cellco willfully took an adverse employment action against Finkton.

124.    Cellco knows that terminating Finkton's employment without cause and after she

objectively improved her performance would cause Finkton harm up to and including

economic harm.

125.    Cellco terminated Finkton's employment because she is African American.

126.    Cellco terminated Finkton's employment because she is a cisgender woman.

127.    Cellco terminated Finkton's employment in retaliation for filing protected complaints

with HR.

128.    Cellco terminated Finkton's employment in retaliation against filing an EEOC charge.

129.    As a result of Cellco's actions, Finkton suffered and will continue to suffer monetary and

emotional damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

130.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully

restated herein.

131.    Throughout her employment, Finkton was fully competent to perform her essential job

duties.

132.    Defendants treated Finkton differently than other similarly situated employees based on

her race.

133.    Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Finkton due to

her race.

134.    On or about October 17, 2019, Defendants terminated Finkton without just cause.

135.    Defendants' purported reason for Finkton's termination was pretextual.

136.   At all times material herein, similarly situated non-African American employees were not terminated without just cause.

137.   Defendant's terminated Finkton based on her race.

138.   Defendants violated R.C. § 4112.01 *et seq.* when they terminated Finkton based on her race.

139.   Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

140.   As a direct and proximate result of Defendant's conduct, Finkton has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

141.   Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

142.   Finkton is African-American, and thus is in a protected class for her race.

143.   Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

144.   Cellco treated Finkton differently than other similarly situated employees based upon her race.

145.   Cellco's termination of Finkton's employment was an adverse employment action against her.

146.   Cellco's purported reason for Finkton's employment termination was pretextual.

147.   Cellco actually terminated Finkton's employment due to her race.

148.   Cellco violation Title VII by terminating Finkton's employment because of her race.

149.    Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

150.    Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's race.

151.    Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's race.

152.    Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

153.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

**COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

154.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155.    Finkton is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

156.    Defendants treated Finkton differently than other similarly situated employees based on her gender.

157.    Defendants discriminated against Finkton on the basis of her gender throughout her employment with Defendants.

158.    Defendants terminated Finkton's employment without just cause.

159.    Defendants terminated Finkton's employment based on her gender.

160.    Defendants' discrimination against Finkton based on her gender violates R.C. § 4112.01 *et seq.*

161. Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

162. As a direct and proximate result of Defendants' conduct, Finkton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

163. Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

164. Finkton is a cisgender woman, and thus is in a protected class for her gender.

165. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's gender.

166. Cellco treated Finkton differently than other similarly situated employees based upon her gender.

167. Cellco's termination of Finkton's employment was an adverse employment action against her.

168. Cellco's purported reason for Finkton's employment termination was pretextual.

169. Cellco actually terminated Finkton's employment due to her gender.

170. Cellco violation Title VII by terminating Finkton's employment because of her gender.

171. Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

172. Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's gender.

173. Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's gender.

174.    Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

175.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

### COUNT V: RETALIATION

176.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

177.    As a result of the Defendant's discriminatory conduct described above, Finkton complained about the disparate treatment she was experiencing from Flynn and Sigrist to HR and filed an EEOC charge.

178.    Subsequent to Finkton reporting the disparate treatment from Flynn and Sigrist to HR and filing an EEOC charge, Finkton was placed on an official employment review.

179.    When Finkton reached out to other branches, this employment review program did not exist anywhere else.

180.    When Finkton asked Sigrist for the exact company policy where this employment review program existed, Sigrist explained that there was no official company policy.

181.    The official employment review program was a discretionary program implemented and perpetuated by Sigrist, Flynn, and Boggs.

182.    The official employment review program imposed expectations on Finkton that were greater than the company-wide policy.

183.    The official employment review program subjected Finkton to more frequent observations from Flynn and Boggs.

184.    Finkton was placed on this discretionary program for reporting the disparate treatment to HR and for filing the EEOC charge.

185.    Finkton's employment was terminated on or around October 17, 2019 even though documentation from the discretionary program showed that her performance was improving.

186.    Defendant's actions were retaliatory in nature based on Finkton's opposition to the unlawful discriminatory conduct.

187.    Pursuant to R.C. § 4112 *et seq.* and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

188.    As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Finkton's employment, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Finkton demands from Defendants the following:

a)  Issue an order requiring Defendants to restore Finkton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

b)  An award against each Defendant of compensatory and monetary damages to compensate Finkton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c)  An award of punitive damages against each Defendant in an amount in excess of $25,000;

d)  An award of reasonable attorneys' fees and non-taxable costs for Finkton's claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
        Trial Attorney
Evan R. McFarland (0096953)
**The Spitz Law Firm**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitsLawFirm.com

*Attorney for Plaintiff Tiffany Finkton*

## JURY DEMAND

Plaintiff Tiffany Finkton demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)

COPY

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


TIFFANY FINKTON
    **PLAINTIFF**

                                       Use below number on
                                       all future pleadings

    -- vs --

                                  No.  A 2004437
                                       SUMMONS

CELLCO PARTNERSHIP DBA VERIZON
    **DEFENDANT**


        CELLCO PARTNERSHIP DBA VERIZON
        3324 PRINCETON RD              D - 1
        HAMILTON OH 45011


You are notified
that you have been named Defendant(s) in a complaint filed by

    TIFFANY FINKTON
    3213 ROESCH BLVD EAST APT E
    FAIRFIELD OH 45014

                                            Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney                AFTAB PUREVAL
MATTHEW G BRUCE                         Clerk, Court of Common Pleas
11260 CHESTER ROAD                      Hamilton County, Ohio
SUITE 825
CINCINNATI        OH        45246

                                  By  RICK HOFMANN
                                             Deputy


                                Date:    December 21, 2020

D130611764



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
December 18, 2020 04:01 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1017176

**TIFFANY FINKTON**                          **A 2004437**

vs.

**CELLCO PARTNERSHIP DBA VERIZON**

**FILING TYPE:  INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 19**

EFR200

**IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| TIFFANY FINKTON<br>3213 Roesch Blvd. East, Apt. E<br>Fairfield, OH 45014 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| CELLCO PARTNERSHIP<br>d/b/a Verizon<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>CELLCO PARTNERSHIP<br>c/o CT Corp. System (Stat. agent)<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| BOB FLYNN<br>c/o Cellco Partnership<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | |
| -and- | ) ) | |
| JILLIAN SIGRIST<br>c/o Cellco Partnership<br>3324 Princeton Rd,<br>Hamilton, OH 45011 | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Tiffany Finkton, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

## PARTIES

1. Tiffany Finkton ("Finkton") is a resident of the city of Fairfield, county of Butler, state of Ohio.

2. Cellco Partnership ("Cellco") is a for profit corporation company that conducts business throughout the state. The relevant location where the events and omission of the Complaint took place was 3324 Princeton Road, Hamilton, Ohio 45011 and at Cellco's other locations.

3. Cellco is, and was at all time hereinafter mentioned, Finkton's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e and R.C. § 4112.01(A)(2).

4. Defendant Bob Flynn ("Flynn") is a resident of the state of Ohio, upon information and belief.

5. Flynn was, at all time hereinafter mentioned, an individual who was a District Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Flynn's employment.

6. Cellco employed Flynn in the position of District Manager.

7. Flynn was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

8. Flynn made, and/or participated in, the adverse actions asserted, herein.

9. Defendant Jillian Sigrist ("Sigrist") is a resident of the state of Ohio, upon information and belief.

10. Sigrist was, at all times hereinafter mentioned, an individual who was a General Manager at Cellco who acted directly or indirectly in the interest of Cellco and/or within the scope of Sigrist's employment.

11. Cellco employed Sigrist in the position of General Manager.

12. Sigrist was, at all times hereafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

13. Sigrist made, and/or participated in the adverse actions asserted, herein.

## JURISDICTION AND VENUE

14. The material events alleged in this Complaint occurred in Hamilton County and at Cellco's other locations.

15. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (2) and (3).

16. Venue is proper pursuant to Civ. R. (3)(C)(1), (2), (3), and/or (6).

17. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

18. Within 180 days of the conduct alleged below, Finkton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-01844).

19. On or about October 15, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Finkton regarding the EEOC Charge.

20. Finkton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

21. Finkton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

22. Finkton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Finkton was a Fantastic Employee

23. Finkton is a former employee of Defendants.

24. Cellco employed Finkton as a Retail Sales Representative and Solutions Specialist.

25. Finkton was qualified for each of her positions with Cellco.

26. Finkton was fully able to perform the essential functions of each of her positions with Cellco.

27. Finkton began working for Defendants on June 2, 2016 in Charleston, West Virginia.

28. In the first four months of her employment, Finkton was first or second in her district for highest total sales.

29. Finkton had no issues whatsoever while working in West Virginia for Cellco.

30. In or around October 2016, Finkton was given a two-year contract and a raise to relocate to Cincinnati and help open a new store in Tri-County.

31. From the time Finkton started at the Tri-County location until October 2017, Finkton always met her sales goals and continuously received raises.

32. In or around October 2017, Finkton was asked to transfer to another Cellco store opening on Liberty Way.

33. At the Liberty Way location, Finkton continued her exceptional performance and was on track to go into management.

34. In or around early 2018, Finkton developed a kidney issue, but had no issues obtaining Family Medical Leave Act ("FMLA") paperwork and taking a month off to recover.

### B. Finkton's Protected Class

35. Finkton is African American, placing her within a protected class based on her race.

36. Finkton is a cisgender woman, placing her within a protected class based on her gender.

### C. Finkton Received her First Write-Up due to a Data Entry Error

37. Finkton received her first write-up in or around January 2019 for poor pull through numbers.

38. Pull through numbers refer to a sales representatives' ability to sell accessories to customers in addition to whatever they came into the store to purchase.

39. Finkton disputed this write-up by proving the recorded numbers were incorrect, and management was able to adjust the numbers appropriately.

40. Despite the adjustment, Finkton was still made to sign the write-up.

41. Later, it came to light that Human Resources ("HR") had mis-recorded pull through numbers for many people that month; disparately, Finkton was the only person given a write-up.

### D. Finkton Began Working Under and Experiencing Disparate Treatment from Defendants Sigrist and Flynn.

42. In or around April 2019, Finkton was transferred to Cellco's Fairfield location, and began working under General Manager Defendant Sigrist and District Manager Defendant Flynn.

43. Flynn had a reputation for baselessly firing employees, creating many lawsuits as a result.

44. In or around May 2019, Finkton took approved time off work.

45. Despite Finkton vacation keeping her away from work for one week, Flynn still held Finkton to the same monthly sales quotas.

46. As a result, Finkton finished last in sales for the store that month.

47. This report hurt Finkton's performance numbers.

48. Additionally, Finkton received a write-up from Flynn when she returned to work.

49. The write-up detailed that Finkton had poor pull through numbers again; however, the work was neither poor nor recent.

50. The write-up detailed that Finkton's pull through numbers were around 28%, but the company standard for pull through numbers was 22%.

51. Finkton was performing six percentage points higher than the company standard, but Flynn imposed a 30% standard.

52. Further, the work that the write-up referenced was done at the Liberty Way location, not the Fairfield location.

53. Finkton disputed the write-up.

54. In or around July 2019, Finkton received a final written warning from Flynn, despite once again satisfying company standards for pull through numbers (she was at 26% and the requirement was still 22%).

55. On or around July 25, 2019, Finkton came to work three minutes after her shift was scheduled to start.

56. Cellco has a five minute-window policy, that says employees have a five minute-window after the time their shift is scheduled to start to clock in before being counted late.

57. Therefore, Finkton was not yet late by coming in three minutes after her shift was scheduled to start.

58. Finkton asked her coworker to hand her a company tablet so that she could clock in.

59. Sigrist intercepted the tablet and demanded that Finkton be completely ready to work before clocking in.

60. Sigrist deemed Finkton "not completely ready to work," because she was still holding personal items.

61. Up until this incident, Finkton had always been permitted to clock in immediately after arriving for her shift and had never been expected to set her personal items down first.

62. Disparately, no other employees were held to this standard.

63. Despite this incident, Finkton was still able to clock in within the five minute-window.

64. Later that day, Sigrist approached Finkton and claimed Finkton had been late for her shift numerous times within the past month.

65. Finkton disputed this and asked Sigrist to elaborate.

66. Sigrist explained that while she had not checked the entire month, the records showed that Finkton had clocked in one or two minutes after her shift was scheduled to start multiple times that month.

67. Finkton then asked Sigrist if she had been closely observing her, or if the incident from that morning prompted Sigrist's investigation into her clock-in times.

68. Sigrist admitted that she had been prompted to check Finkton's clock-in times based on the incident that morning.

69. Because of Cellco's five minute-window policy, Finkton was never actually late for any of her shifts.

70. Additionally, some of the days that Sigrist flagged were days that the manager had been late which prevented any of the sales representatives from entering the locked store let alone from clocking in.

71. Sigrist disparately did not perform similar clock-in checks for any of the other employees outside Finkton's protected class.

72. From that point onward, Sigrist would say things like "do you even want to be here," "you're just trying to get fired from unemployment benefits," and "I know you're just here until you get your Masters Degree and then you'll leave," to Finkton, implying that Finkton was a poor performing employee who should just resign.

**E. Finkton Properly Filed a Complaint with HR Regarding the Disparate Treatment from Flynn and Sigrist**

73. On or around August 16, 2020, Finkton spoke on the phone with the District HR Director, Julie Boggs, concerning the disparate treatment she had been receiving from Flynn and Sigrist.

74. This phone conversation constituted a protected complaint of discrimination.

75. Finkton cited her race and her gender as the reasons for the disparate treatment.

76. Finkton further explained that on each of her write-ups there were alarming lists of observation scores.

77. The observation scores referred to regularly performed observations, where managers would randomly choose a few times every month to simply observe a sales representative and rate their overall sales performance.

78. Finkton's observation lists showed that she was being observed six or seven times more often that any of her other coworkers

79. Therefore, Finkton was being singled out by Flynn and Sigrist.

80. Additionally, Finkton explained that she was more frequently being scheduled to work an opening and closing shift in the same day than her coworkers.

81. Having an opening and a closing shift in the same day was extremely physically taxing.

82. Finkton concluded by stating that her Caucasian male coworkers were frequently late and performing worse than she was yet were not being written up.

83. Boggs said she would investigate the situation over the next two weeks.

84. On or around August 29, 2019, Boggs called Finkton and explained that her investigation did not find any wrongdoing on the part of Cellco, Flynn, or Sigrist and that Finkton was receiving fair documentation when compared to her coworkers.

85. Subsequently, Finkton asked a coworker (Josh Ellis) about his observation lists.

86. Ellis shared his observation lists for the months of April through August.

87. Finkton found that Ellis had been observed eleven times as compared to Finkton's 29 times; this contradicted Boggs' conclusion that Finkton had received fair documentation in comparison to her coworkers.

### F. Finkton Filed a Claim with the EEOC

88. In or around mid-August 2019, Finkton filed a Charge with the EEOC denoting discrimination based on her gender and race and retaliation against her for protected complaints.

### G. Finkton's Employment Was Suddenly Placed Under Official Review

89. On or around September 10, 2019, Finkton was called into Sigrist's office and told her employment was officially under review for potential termination.

90. As she had never heard of an official employment review before, Finkton requested the Cellco company policy regarding this review.

91. Sigrist said there was no policy.

92. Confused, Finkton asked how the review was supposed to work.

93. Sigrist explained that Boggs and Flynn would be carefully reviewing Finkton's employment moving forward.

94. Finkton reached out to an area manager and Regional Manager, Pat LNU, to ask if similar review programs were implemented at their stores.

95. Both the area manager and Pat LNU said they had never heard of such review programs.

## H. Cellco Denies Finkton's Requested Transfer

96. After talking with Finkton, the area manager suggested Finkton come work at her location because she believed Finkton's performance numbers were fantastic.

97. Finkton requested a transfer to the area manager's location.

98. Boggs denied her request, citing that she could not transfer Finkton because she was under ongoing discipline.

99. However, Finkton was transferred from the Liberty Way location to the Fairfield location while under ongoing discipline.

100. Therefore, Bogg's decision not to transfer Finkton was completely discretionary.

## I. Cellco Denies Finkton the Ability to Apply for Other Positions

101. Finkton attempted to simply apply to other positions within the company at the area manager's location.

102. Boggs denied Finkton's applications because she was under ongoing discipline.

103. When Finkton disputed this, Sigrist told her that if Finkton quit her job she could reapply after a year or so, but if she was terminated from her employment it is likely she would never be rehired again.

104. Finkton asked Sigrist why she could not just apply now, and if Sigrist was attempting to intimidate her.

105. Sigrist laughed at Finkton for asking that question and gave no useful response.

## J. Cellco Terminated Finkton's Employment

106. On or around October 17, 2019, Finkton's employment was terminated.

107. Sigrist, Finkton's Manager Andrew LNU, and Boggs were on the phone call when Finkton received the news.

108. Finkton asked for official documentation

109. Sigrist responded that there would not be any, but that she could provide Finkton with copies of her previous write-ups.

110. When Finkton pushed back, Sigrist said she would provide Finkton with appropriate documentation for insurance purposes.

111. When Finkton received the copies of her write-ups, they showed that from August 2019 through October 2019, Finkton had improved her performance numbers.

112. Cellco has a progressive discipline policy.

113. The official employment review that Finkton was placed under was not part of the progressive discipline policy.

114. Finkton was terminated without cause, after improving her work performance, as a result of a non-existent, discretionary review program separate from Cellco's official progressive disciplinary policy.

115. Cellco did not terminate Finkton's Caucasian, male coworkers who were performing objectively worse than her.

116. Cellco did not terminate Finkton's similarly situated coworkers who did not file protected complaints with HR and the EEOC.

117. Cellco did not terminate Finkton for poor work performance.

118. Cellco knowingly terminated Finkton's employment.

119. Cellco knowingly took adverse employment actions against Finkton.

120. Cellco intentionally terminated Finkton's employment.

121. Cellco intentionally took adverse employment actions against Finkton.

122. Cellco willfully terminated Finkton's employment.

123. Cellco willfully took an adverse employment action against Finkton.

124. Cellco knows that terminating Finkton's employment without cause and after she objectively improved her performance would cause Finkton harm up to and including economic harm.

125. Cellco terminated Finkton's employment because she is African American.

126. Cellco terminated Finkton's employment because she is a cisgender woman.

127. Cellco terminated Finkton's employment in retaliation for filing protected complaints with HR.

128. Cellco terminated Finkton's employment in retaliation against filing an EEOC charge.

129. As a result of Cellco's actions, Finkton suffered and will continue to suffer monetary and emotional damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

130. Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Throughout her employment, Finkton was fully competent to perform her essential job duties.

132. Defendants treated Finkton differently than other similarly situated employees based on her race.

133. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Finkton due to her race.

134. On or about October 17, 2019, Defendants terminated Finkton without just cause.

135. Defendants' purported reason for Finkton's termination was pretextual.

136. At all times material herein, similarly situated non-African American employees were not terminated without just cause.

137. Defendant's terminated Finkton based on her race.

138. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Finkton based on her race.

139. Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

140. As a direct and proximate result of Defendant's conduct, Finkton has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

141. Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

142. Finkton is African-American, and thus is in a protected class for her race.

143. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

144. Cellco treated Finkton differently than other similarly situated employees based upon her race.

145. Cellco's termination of Finkton's employment was an adverse employment action against her.

146. Cellco's purported reason for Finkton's employment termination was pretextual.

147. Cellco actually terminated Finkton's employment due to her race.

148. Cellco violation Title VII by terminating Finkton's employment because of her race.

149.     Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

150.     Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's race.

151.     Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's race.

152.     Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

153.     As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

**COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

154.     Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155.     Finkton is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

156.     Defendants treated Finkton differently than other similarly situated employees based on her gender.

157.     Defendants discriminated against Finkton on the basis of her gender throughout her employment with Defendants.

158.     Defendants terminated Finkton's employment without just cause.

159.     Defendants terminated Finkton's employment based on her gender.

160.     Defendants' discrimination against Finkton based on her gender violates R.C. § 4112.01 *et seq.*

161. Finkton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

162. As a direct and proximate result of Defendants' conduct, Finkton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Cellco Only)

163. Finkton restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

164. Finkton is a cisgender woman, and thus is in a protected class for her gender.

165. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's gender.

166. Cellco treated Finkton differently than other similarly situated employees based upon her gender.

167. Cellco's termination of Finkton's employment was an adverse employment action against her.

168. Cellco's purported reason for Finkton's employment termination was pretextual.

169. Cellco actually terminated Finkton's employment due to her gender.

170. Cellco violation Title VII by terminating Finkton's employment because of her gender.

171. Cellco violated Title VII by treating Finkton differently from other similarly situated employees outside her protected class.

172. Cellco violated Title VII by applying its employment policies in a disparate manner based on Finkton's gender.

173. Cellco violated Title VII by applying its disciplinary policies in a disparate manner based on Finkton's gender.

174.    Finkton incurred emotional distress damages as a result of Cellco's conduct described herein.

175.    As a direct and proximate result of Cellco's acts and omission, Finkton has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

176.    Finkton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

177.    As a result of the Defendant's discriminatory conduct described above, Finkton complained about the disparate treatment she was experiencing from Flynn and Sigrist to HR and filed an EEOC charge.

178.    Subsequent to Finkton reporting the disparate treatment from Flynn and Sigrist to HR and filing an EEOC charge, Finkton was placed on an official employment review.

179.    When Finkton reached out to other branches, this employment review program did not exist anywhere else.

180.    When Finkton asked Sigrist for the exact company policy where this employment review program existed, Sigrist explained that there was no official company policy.

181.    The official employment review program was a discretionary program implemented and perpetuated by Sigrist, Flynn, and Boggs.

182.    The official employment review program imposed expectations on Finkton that were greater than the company-wide policy.

183.    The official employment review program subjected Finkton to more frequent observations from Flynn and Boggs.

184.   Finkton was placed on this discretionary program for reporting the disparate treatment to HR and for filing the EEOC charge.

185.   Finkton's employment was terminated on or around October 17, 2019 even though documentation from the discretionary program showed that her performance was improving.

186.   Defendant's actions were retaliatory in nature based on Finkton's opposition to the unlawful discriminatory conduct.

187.   Pursuant to R.C. § 4112 *et seq.* and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

188.   As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Finkton's employment, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Finkton demands from Defendants the following:

a) Issue an order requiring Defendants to restore Finkton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

b) An award against each Defendant of compensatory and monetary damages to compensate Finkton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Finkton's claims as allowable under law;

e)   An award of the taxable costs of this action; and

f)   An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
      Trial Attorney
Evan R. McFarland (0096953)
**The Spitz Law Firm**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitsLawFirm.com

*Attorney for Plaintiff Tiffany Finkton*

## JURY DEMAND

Plaintiff Tiffany Finkton demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
December 18, 2020 04:01 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1017176

**TIFFANY FINKTON**                           **A 2004437**

vs.

**CELLCO PARTNERSHIP DBA
VERIZON**

## FILING TYPE:  CLASSIFICATION

## PAGES FILED: 1

EFR200



| COURT OF COMMON PLEAS<br>HAMILTON COUNTY, OHIO | CLASSIFICATION FORM<br>WWW.COURTCLERK.ORG | AFTAB PUREVAL<br>CLERK OF COURTS |
| --- | --- | --- |

**CASE NUMBER:**_____ **PLAINTIFF:** TIFFANY FINKTON _____

**PURSUANT TO SUPERINTENDENCE RULE 4, THIS CASE WAS ORIGINALLY FILED AND DISMISSED**

**UNDER CASE NUMBER:**_____ **BY JUDGE** _____

## PLEASE INDICATE CLASSIFICATION INTO WHICH THIS CASE FALLS (please only check one):

☐ Other Tort – C360
☐ Personal Injury – C310
☐ Wrongful Death – C320
☐ Vehicle Accident – C370

☐ Professional Tort – A300
☐ Personal Injury – A310
☐ Wrongful Death – A320
☐ Legal Malpractice – A330
☐ Medical Malpractice – A340

☐ Product Liability – B350
☐ Personal Injury – B310
☐ Wrongful Death – B320

☐ Worker's Compensation
☐ Non-Compliant Employer – D410
☐ Appeal – D420

☐ Administrative Appeals – F600
☐ Appeal Civil Service – F610
☐ Appeal Motor Vehicle – F620
☐ Appeal Unemployment – F630
☐ Appeal Liquor – F640
☐ Appeal Taxes – F650
☐ Appeal Zoning – F660

☐ Certificate of Qualification – H600

☑ Other Civil – H700-34
☐ Appropriation – H710
☐ Accounting – H720
☐ Beyond Jurisdiction –730
☐ Breach of Contract – 740
☐ Cancel Land Contract – 750
☐ Change of Venue – H760
☐ Class Action – H770
☐ Convey Declared Void – H780
☐ Declaratory Judgment – H790
☐ Discharge Mechanics Lien – H800
☐ Dissolve Partnership – H810
☐ CONSUMER SALES ACT (1345 ORC) – H820
☐ Check here if relief includes declaratory
   judgment, injunction or class action
   recovery – H825
☐ Habeas Corpus – H830
☐ Injunction – H840
☐ Mandamus – H850
☐ On Account – H860
☐ Partition – H870
☐ Quiet Title – H880
☐ Replevin – H890
☐ Sale of Real Estate – H900
☐ Specific Performance – 910
☐ Restraining Order – H920
☐ Testimony – H930-21
☐ Environmental – H940
☐ Cognovit – H950
☐ Menacing by Stalking – H960
☐ ] Repo Title – Transfer of Title Only – 970
☐ ] Repo Title – With Money Claim – H980
☐ Injunction Sexual Predator – 990
☐ SB 10 – Termination – H690
☐ SB 10 – Reclassification – H697

**DATE:** 12/18/2020 _____

**ATTORNEY (PRINT):** Matthew G. Bruce, Esq. _____

**OHIO SUPREME COURT NUMBER:** 0083769 _____

Revised 01/02/2017



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
December 18, 2020 04:01 PM
      AFTAB PUREVAL
     Clerk of Courts
   Hamilton County, Ohio
  CONFIRMATION 1017176
```

**TIFFANY FINKTON**                              A 2004437

vs.

**CELLCO PARTNERSHIP DBA
VERIZON**

## FILING TYPE: WRITTEN REQUEST FOR SERVICE (CERTIFIED MAIL)

## PAGES FILED: 1

EFR200



**COMMON PLEAS COURT**
**HAMILTON COUNTY, OHIO**

TIFFANY FINKTON

_____        CASE NO. _____

**VS**                                  **DOCUMENT TO BE SERVED & ITS FILED DATE**
CELLCO PARTNERSHIP d/b/a Verizon        Complaint 12.18.20

et al.                                  _____

                                        _____

**PLAINTIFF/DEFENDANT   REQUESTS:**

☑ **CERTIFIED MAIL SERVICE**           ☐ **EXPRESS MAIL SERVICE**
☐ **PERSONAL SERVICE**                 ☐ **REGULAR MAIL SERVICE**
☐ **PROCESS SERVICE**                  ☐ **RESIDENCE SERVICE**
☐ **REGISTERED INTERNATIONAL**         ☐ **FOREIGN SHERIFF**

**ON:**

1) CELLCO PARTNERSHIP                   3) BOB FLYNN
   d/b/a Verizon                           c/o Cellco Partnership
   3324 Princeton Rd                       3324 Princeton Rd
   Hamilton, OH 45011                      Hamilton, OH 45011

2) CELLCO PARTNERSHIP                   4) JILLIAN SIGRIST
   c/o CT Corp. System (Stat. agent)       c/o Cellco Partnership
   4400 Easton Commons Way, Suite 125      3324 Princeton Rd
   Columbus, OH 43219                      Hamilton, OH 45011

Matthew G. Bruce, Esq.                  216-291-4744
**ATTORNEY**                            **PHONE NUMBER**
11260 Chester Road, Suite 825 Cincinnati, OH 45246    0083769
**ADDRESS**                             **ATTORNEY NUMBER**

                                        Revised 9-18-18

UNITED STATES POSTAL SERVICE

Case: 1:20-cv-01048-MRB Doc #: 1-1 Filed: 01/30/21 CERTIFIED MAIL SERVICE RETURN SUMMONS & COMPLAINT
A 2004437    D2
BOB FLYNN
FILED: 12/28/2020  6:55:41

Date Produced: 12/28/2020

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0932 0100.
Our records indicate that this item was delivered on 12/26/2020 at 04:46 p.m. in HAMILTON, OH 45011.
The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16003594SEQ1

Date Produced: 12/28/2020

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0932 0117.
Our records indicate that this item was delivered on 12/26/2020 at 04:46 p.m. in HAMILTON, OH 45011.
The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16003603SEQ1

UNITED STATES
POSTAL SERVICE™
Case: 1:20-cv-01020-TSB Doc #: 1-1 Filed: 01/12/21 CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2004437    D1
CELLCO PARTNERSHIP DBA VERIZON
FILED: 12/28/2020  6:55:41

Date Produced: 12/28/2020

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0932 0087.
Our records indicate that this item was delivered on 12/26/2020 at 04:46 p.m. in HAMILTON, OH 45011.
The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16003585SEQ1

SUMMONS & COMPLAINT
A 2004437    D1
CELLCO PARTNERSHIP DBA VERIZON
FILED: 12/28/2020  6:55:41

**UNITED STATES**
**POSTAL SERVICE** ™

Date Produced: 12/28/2020

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0932 0094.
Our records indicate that this item was delivered on 12/23/2020 at 11:44 a.m. in COLUMBUS, OH 43224.
The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16003591SEQ1